1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Aryeh Kaufman, Esq. (SBN 289745)
aryeh@akaufmanlegal.com
**LAW OFFICE OF ARYEH KAUFMAN**
5482 Wilshire Blvd, PMB 1907
Los Angeles, CA 90036
Tel: (323) 943-2566
Fax: (213) 402-8598

*Attorney for Defendants,*
**PHYTAGE LABS, LLC AND FIGHT AGE LABS, LLC**

### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARY-LISA GUILLAUME, RYAN ARTOLACHIPE, JESSICA CARMELLO, CASSONDRA CARPER, MICHAEL DOREN, RAVEN EVANS, RYAN GARCIA, MESSIAH JOHNSON, ROBERT LAICH, BRYCE MACCHARLES, AND CHRISTOPHER TIJERINA,<br><br>Plaintiffs,<br><br>v.<br><br>FIGHT AGE LABS, LLC, a Wyoming limited liability company; PHYTAGE LABS LLC, a Florida limited liability company, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-09289-MCS-JPR<br><br>[*Originally filed in Los Angeles County Superior Court, Case No. 21STCV36116*]<br><br>**DEFENDANTS PHYTAGE LABS, LLC AND FIGHT AGE LABS, LLC'S OPPOSITION TO THE PLAINTIFFS' MOTION TO REMAND THIS CASE TO STATE COURT**<br><br>Action Filed: September 30, 2021<br><br>Hearing Date: January 24, 2022<br>Time:        9:00 a.m.<br>Judge:      Mark C. Scarsi<br>Ctrm:       7C |

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

# **TABLE OF CONTENTS**

Page No.

TABLE OF AUTHORITIES ...................................................................... 3

I. THIS COURT HAS SUBJECT MATTER JURISDICTION ................................... 7

  A. At Least One Plaintiff Meets the Amount in Controversy ................................... 7

  B. Plaintiffs Themselves Aggregated their Damages ................................. 13

II. ARTICLE III STANDING EXISTS FOR THE CLAIMS .................................... 13

  A. Legal Standard ................................................................ 14

  B. Plaintiffs Alleged A Concrete Injury Sufficient for Standing ........................... 14

III. CONCLUSION .............................................................. 19

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1

## **TABLE OF AUTHORITIES**

2   Cases                                                                                      Page

3   *Agopian v. Fed. Express Corp.*,

4      2021 U.S. Dist. LEXIS 119047, at *3 (June 25, 2021) ........................................10

5

6   *Balsam v. Trancos, Inc.*,

7      2013 Cal. App. 4th, 1083, 1103 (2012) ...........................................................9, 12

8   *Blanchard v. Fluent*,

9      2018 U.S. Dist. LEXIS 156546 ....................................................................17, 18

10

11  *Brady v. Mercedes-Benz USA, Inc.*,

12     243 F.Supp.2d 1004 (2002) ...............................................................................7

13  *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,

14     No. 16-CV-02941-LHK, 2016 U.S. Dist. LEXIS 123455, at *5 (N.D. Cal. Sep.

15        12, 2016) ........................................................................................................14

16

17  *Eichenberger v. ESPN, Inc.*,

18      876 F.3d 979, 983 (9th Cir. 2017) ....................................................................17

19

20  *Fenton v. Wells Fargo Home Mortgage*,

21     2017 WL 1346672, *3 (S.D. Cal. April 12, 2017) ...............................................7

22  *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*,

23     528 U.S. 167, 180-81 (2000) ............................................................................14

24  *Galt G/S v. JSS Scandinavia*,

25     142 F.3d 1150, 1155 (9th Cir. 1998) ..................................................................7

26

27  *Guglielmino v. McKee Foods Corp.*,

28

506 F.3d 696, 701 (9th Cir. 2007) ......................................................................7

*Hicks v. Toys 'R' Us-Del., Inc.*,

    No. CV 13-1302 DSF JCG, 2014 U.S. Dist. LEXIS 135596, at *5 (C.D. Cal.

    Sept. 2, 2014) ......................................................................................................10

*Hypertouch, Inc. v. ValueClick, Inc.*,

    192 Cal. App. 4th 805, 829, 123 Cal. Rptr. 3d 8, 26 (2011) ..............................20

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555, 560-61 (1992) .............................................................................14

*Lynch v. AML Network Ltd.*,

    2021 U.S. Dist. LEXIS 187234 (C.D. Cal. Sep. 27, 2021) .........................passim

*Ponce v. Medical Eyeglass Center, Inc.*,

    2015 WL 4554336, at *3 (C.D. Cal. July 27, 2015)..............................................7

*Rachner v. Network Funding L.P.*,

    2017 WL 5508518, *4 (C.D. Cal. Nov. 16, 2017) .................................................7

*Rolex Watch United States v. Zeotec Diamonds*,

    No. CV 02-1089 PSG (VBKx), 2021 U.S. Dist. LEXIS 200238, at *7 (C.D. Cal.

    Aug. 24, 2021) .....................................................................................................10

*Exxon Mobil. Corp. v. Allapattah Services, Inc.*,

    542 U.S. 546, 549 (2005).......................................................................................8

*Silverstein v. Keynetics, Inc.*,

    2018 U.S. Dist. LEXIS 189114, *23-24 (C.D. Cal. Nov. 5, 2018)...............16, 19

*Soriano v. Lending Tree, LLC*,

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

2018 U.S. Dist. LEXIS 63924 (N.D. Cal. Apr. 16, 2018) ................................ 8, 12

*Spitzer v. Aljoe*,
2016 WL 3275148, *1 (N.D. Cal. June 15, 2016) ................................... 7

*Spokeo, Inc. v. Robins (Spokeo I)*,
136 S. Ct. 1540, 1547 (2016) ................................................ 14

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ..................................................... 14,16

*Tuitama v. Nationstar Mortgage LLC*,
2015 WL 12744269, *2 (C.D. Cal. April 13, 2015) ............................ 7

*United Steelworkers of America v. Phelps Dodge Corp.*,
896 F.2d 403, 407 (9th Cir. 1990) ......................................... 9

*Van Patten v. Vertical Fitness Group, LLC*,
847 F.3d 1037, 1043 (9th Cir. 2017) ..................................... 15, 17

*Warth v. Seldin*,
422 U.S. 490, 518 (1975) .................................................. 14

## **Statutes**

28 U.S. Code §1332(a) ......................................................... 7, 8
Article III of the U.S. Constitution .......................................... passim
Cal. Bus. & Prof. Code § 17529.5 ............................................ passim
Cal. Bus. & Prof. Code § 17529.5(a)(2)-(3) ................................... 18
California Civil Procedure Code § 378 ....................................... 8
Federal Rules of Civil Procedure Rule 23 ................................... 9

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Federal Rules of Evidence Rule 201(b)..............................................................7

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    THIS COURT HAS SUBJECT MATTER JURISDICTION

In assessing whether the claims of one of the plaintiffs meets the amount in controversy requirement of 28 U.S. Code §1332(a), the Court may consider the amount of the recovery of attorneys' fees, if a plaintiff is suing under a statute that authorizes an award of fees to a prevailing party. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998) ("The amount in controversy *includes* the amount of damages in dispute, *as well as attorney's fees*, if authorized by statute or contract) (emphasis added); *Ponce v. Medical Eyeglass Center, Inc.*, 2015 WL 4554336, at *3 (C.D. Cal. July 27, 2015); *Rachner v. Network Funding L.P.*, 2017 WL 5508518, *4 (C.D. Cal. Nov. 16, 2017); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1011 (N.D. Cal. 2002). Where removal is based on diversity jurisdiction under §1332(a), and the Complaint does not specify a dollar amount as to all the relief sought by a plaintiff, the removing defendant need only show that the amount in controversy exceeds $75,000, by a preponderance of the evidence. *Rachner*, 2017 WL 5508518, at *3; *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). For purposes of removal, pursuant to F.R.E. 201(b), a Court may take judicial notice of various categories of documents, including the opinion of another Court, matters of public record, documents filed in other cases, documents attached to the complaint, as well as magazine or newspaper articles. *Spitzer v. Aljoe*, 2016 WL 3275148, *1 (N.D. Cal. June 15, 2016); *Tuitama v. Nationstar Mortgage LLC*, 2015 WL 12744269, *2 (C.D. Cal. April 13, 2015); *Fenton v. Wells Fargo Home Mortgage*, 2017 WL 1346672, *3 (S.D. Cal. April 12, 2017).

### A.    At Least One Plaintiff Meets the Amount in Controversy

Whether or not Plaintiffs' damages can properly be aggregated to reach the jurisdictional threshold, the amount in controversy for at least one plaintiff does, in fact, satisfy the "amount in controversy" once attorneys' fees are considered. In matters with multiple plaintiffs that have been removed to federal court, it is well-settled that

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

this Court would have jurisdiction over each plaintiff's claim so long as the amount in controversy is met with respect to at least one plaintiff. *See Exxon Mobil. Corp. v. Allapattah Services, Inc.*, 542 U.S. 546, 549 (2005) (holding where at least one plaintiff in diversity action alleges a sufficient amount in controversy, court may exercise supplemental jurisdiction over all claims by other diverse plaintiffs arising out of the same Article III case or controversy). And, in fact, a recent decision from the Northern District of California demonstrates that at least one of the Plaintiffs' claims would meet the "amount in controversy" requirement and provide a proper basis for diversity jurisdiction as to that Plaintiff and supplemental jurisdiction as to the others.

In *Soriano v. Lending Tree, LLC*, 2018 U.S. Dist. LEXIS 63924 (N.D. Cal. Apr. 16, 2018), three plaintiffs joined their claims under CCP § 378 and brought suit for violations of the California Anti-Spam Law, Cal. Bus. & Prof. Code § 17529.5 (the "CASL"). Defendant Lending Tree removed the case from California state court to the Northern District of California based on diversity jurisdiction. In the complaint, one of the plaintiffs alleged she had received 59 "spam" emails and sought damages of $59,000 plus attorneys' fees. *Id.* Plaintiffs moved to remand the case for lack of subject matter jurisdiction, arguing that the amount in controversy requirement of 28 U.S.C. § 1332(a) had not been satisfied. *Id.* First, the court found that because each plaintiff's claim "arises out of the same controversy," i.e., whether the identical advertisements each received were in violation of § 17529.5, it would have jurisdiction over <u>all</u> the claims if only <u>one of the plaintiffs</u> satisfied the amount in controversy by exercising its supplemental jurisdiction over the claims below the monetary threshold. *Id.*

The district court denied the motion to remand, finding it had diversity jurisdiction. *Id.* Critically, the court found that the amount in controversy amount was met with respect to the plaintiff seeking $59,000 in damages because it was "reasonable to anticipate" that, if successful, the plaintiff would recover attorneys' fees greater than $16,000. *Id.* at *4. Thus, combining the "reasonably anticipated" attorneys' fees of over $16,000 with plaintiff's damages of $59,000, the court held it had diversity subject

matter jurisdiction as to that specific individual.  *Id.* Because at least one of the claims satisfied the monetary threshold and all the claims arose from the same controversy, the trial court exercised its supplemental jurisdiction to hear the other two claims falling below the monetary threshold.  *Id.* at *5.

Also instructive are prior fee awards under the CASL.  In this Circuit, further, information such as "rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Attorneys' fees have been routinely awarded in excess of $13,000 in CASL cases with substantially fewer emails at issue.  The fee award in *Balsam v. Trancos* is the best such example.  There, plaintiff challenged eight emails and recovered $7,000 in liquidated damages under the CASL.  *See Balsam v. Trancos, Inc.*, 2013 Cal. App. 4th, 1083, 1103 (2012). There, the plaintiff sought $133,380 in attorneys' fees and the court awarded $81,900 in attorney's fees for a claimed 231.5 hours of billable work prosecuting the action, even though the statutory damages award was only $7,000.  *Id.* at 1104.  The court also found that $400 per hour was a reasonable rate for attorneys' fees and that it was reasonable for two attorneys to bill 231.5 hours in prosecuting the action. *Id.*

While Defendants were unable to determine the precise hourly rates charged by counsel for Plaintiffs in complex commercial litigation matters that are not brought as F.R.C.P. Rule 23 class actions, Defendants refer the Court to *2020 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* (the "Real Rate Report") [1](Ex. A).   In examining legal billing rates and attorneys' fees

---

[1] Defendants respectfully request that this Court take Judicial Notice of the Real Rate Report 2020, which has been attached as Exhibit A to this Memorandum of Points and Authorities as being generally known and accepted within this Court's territorial jurisdiction.  In addition, the Real Rate Report 2020 is filed and publicly available in litigation from the District of Massachusetts, *Muehe, et al v. City of Boston*, Case No. 1:21-cv-11090-RGS, at Docket No. 26-6.  Federal District Courts have previously taken judicial notice of the Real Rate Report.  *See, e.g., Ramierz v. Escondido Unified Sch. Dist.*, 2014 U.S. Dist. LEXIS 198003, at *8 (S.D Cal. Apr. 17, 2014).

applications, courts in this District regularly consider and rely upon the "Real Rate Report," an annual Wolters Kluwer publication based on "actual legal billing, matter information, and paid and processed invoices from a wide range of companies." *Agopian v. Fed. Express Corp.*, 2021 U.S. Dist. LEXIS 119047, at *3 (June 25, 2021). The Real Rate Report is widely accepted within this District as a "useful guidepost to assess the reasonableness" of hourly rates.  *See, e.g., Rolex Watch United States v. Zeotec Diamonds*, No. CV 02-1089 PSG (VBKx), 2021 U.S. Dist. LEXIS 200238, at *7 (C.D. Cal. Aug. 24, 2021) (explaining that "[t]he Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies.")  Indeed, courts in the Central District of California have found that the Real Rate Report is "a much better reflection of true market rates than self-reported rates in all practice areas."  *Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG, 2014 U.S. Dist. LEXIS 135596, at *5 (C.D. Cal. Sept. 2, 2014).  A conservative analysis based on the Real Rate Report's applicable 25th percentile and median billing rates demonstrates that Plaintiffs' award for attorneys' fees as to Plaintiff Tijerina would exceed $13,000, thus meeting the threshold.

       As set forth on the website for Cohelan Khoury & Singer, attorneys Hill, Cohelan and Khoury are all partners in their firm, which consists of fewer than 50 lawyers.[2]  The Real Rate Report states that the 25th percentile hourly rate for Los Angeles-area partners in firms of 50 or fewer lawyers is $398 and the median hourly rate is $494.[3] Attorney De La Rosa is an associate in Cohelan Khoury & Singer; the Real Rate Report 25th percentile and median hourly rate for associates in this size firm are $295 and $410, respectively.[4]  While neither Attorney Cintas nor Attorney Carper appear to have

---

[2] https://www.ckslaw.com/our-team/j-jason-hill-esq-/; https://www.ckslaw.com/our-team/isam-c-khoury-esq-/; https://www.ckslaw.com/our-team/timothy-d-cohelan-esq-/ .
[3] Real Rate Report at 112.
[4] *Id.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

any publicly-available website, publicly-available registration information states that Attorney Cintas was admitted to practice in the State of California in January 2021[5] and Attorney Carper has been admitted to practice law in Nevada since 2020 and in California since January 2021.[6]  The Real Rate Report states the 25th percentile hourly rate for a litigation associate in San Diego, CA in 2019 was $260 per hour, and the median rate $290 per hour.[7]  As an alternative measure, the Real Rate Report also provides that an associate in the San Diego market would charge a median hourly rate of $225 and a 25th percentile rate of $180 per hour; these are the lowest values listed for attorneys in San Diego.[8]  The Real Rate Report provides a 25th percentile hourly rate of $247 for litigation associates in the Las Vegas area and a median hourly rate of $267.[9]

As previously noted, Plaintiff Christopher Tijerina allegedly "received sixty-two (62) of the" at-issue emails.  Compl. at ¶ 26.  In addition to the $1,000 per email in statutory damages that Plaintiff Tijerina seeks—totaling $62,000 in damages—Plaintiff Tijerina also seeks statutorily-authorized attorney's fees.  Compl. at ¶ 124.  Thus, to satisfy the $75,000 amount-in-controversy, Plaintiff Tijerina's attorney's fees need only exceed $13,000; in other words, each of the six attorneys of record in this matter need only bill a mere **$2,166.67 each in total** to meet the $75,000 threshold.  Billing at the lowest hourly rates drawn from the Real Rate Report as set forth above, counsel would need only seek attorneys' fees for a mere **44.5** hours of billable work.[10]

---

[5] Joshua Michael Cintas # 334594 - Attorney Licensee Search (ca.gov);
[6] Jamie L. Carper # 337225 - Attorney Licensee Search; Find a Lawyer – State Bar of Nevada (nvbar.org)
[7] Real Rate Report at 61.
[8] *Id.* at 23.
[9] *Id.* at 28.
[10] $13,000/6 = $2,1667.67 per attorney of billing to meet $13,000 and satisfy the amount in controversy threshold.  Below is a table showing the number of hours each attorney would need to bill for each to reach $2,1667.67, using both the "median" and first quartile hourly billing rates set forth above.

| Attorney | 25th Percentile Rate | Hours Required | Median Rate | Hours Required |
|---|---|---|---|---|

11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Using the highest of each of the hourly rates drawn from the Real Rate Report set forth above (except limiting the top rate for Attorney Cintas to $225), counsel would need to collectively seek attorney's fees for a mere **36.2** hours of billable work for this entire litigation to meet the $75,000 amount in controversy threshold.

Since counsel for Plaintiffs would need only to bill between 36 and 44 hours for the entirety of this litigation to meet the amount-in-controversy threshold, it is a near certainty that this threshold will be met. As noted above, the attorneys in *Balsam* were awarded some $82,000 in attorney's fees for 231.5 hours billed in a matter involving a single plaintiff allegedly receiving violative emails; here, by contrast, Plaintiff Tijerina allegedly received 62 allegedly unlawful emails. An award even one-sixth the size of that in *Balsam* for Plaintiff Tijerina's attorney's fees would still satisfy the amount-in-controversy threshold. Presented with the facts of *Balsam* and the fact that plaintiff alleged receipt of 59 allegedly unlawful emails, the *Soriano* court thus readily found removal was proper because it was "reasonable to anticipate [plaintiff] will receive an award of attorneys' fees in excess of $16,000 if she were to prevail on the merits" of her individual claim. *Soriano*, 2018 U.S. Dist. LEXIS 63924, at *5. Accordingly, under these circumstances—with more at-issue emails than either *Balsam* or *Soriano* as to at least one of the Plaintiffs—this Court should also find that Defendants have demonstrated by a preponderance of evidence that the amount-in-controversy is satisfied as to Plaintiff Tijerina, and this Court thus has diversity jurisdiction over Plaintiff Tijerina's claims and may thus exercise supplemental jurisdiction over the

| | | | | |
|---|---|---|---|---|
| Cohelan | $ 398 | 5.4 | $ 494 | 4.4 |
| Khoury | $ 398 | 5.4 | $ 494 | 4.4 |
| Hill | $ 398 | 5.4 | $ 494 | 4.4 |
| De La Rosa | $ 295 | 7.3 | $ 410 | 5.3 |
| Cintas | $ 180 | 12.0 | $ 225 | 9.6 |
| Carper | $ 247 | 8.8 | $ 267 | 8.1 |
| | | 44.5 | | 36.2 |

12

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1  claims of the remaining plaintiffs.  Accordingly, this Court possess subject matter

2  jurisdiction over this matter in its entirety.

3  **B.      Plaintiffs Themselves Aggregated their Damages**

4  In their Complaint, Plaintiffs themselves aggregate their claims into a single

5  count—the only one in the Complaint—against both Defendants.  Plaintiffs also

6  combine their damages demands into a single amount--$199,000.00—in the solitary

7  Prayer For Relief in the entire Complaint.  More importantly, Plaintiffs also seek

8  damages in which they have an undivided interest or are not allocable severally,

9  namely, the "disgorgement of *all profits* derived from unlawful spams directed to

10  California residents . . ." Compl. at 25.  In other words, Plaintiffs do not just seek

11  damages allocable to their individual respective claims; rather, they seek a common,

12  indivisible amount from Defendants because if Plaintiffs prevailed in obtaining this

13  relief, it would not be owed to "the individuals severally" nor divisible among the

14  Plaintiffs themselves.  Because Plaintiffs have in fact sought damages that are not

15  severally allocable and cannot be attributed to a specific plaintiff's claim, these

16  damages may be properly aggregated and considered towards satisfying the amount in

17  controversy requirement.

18  Finally, in support of their aggregation argument, Plaintiffs cite to various cases

19  in which a Defendant attempts to aggregate several plaintiffs' claims for removal

20  purposes.  However, each of these is inapt because unlike the authority Plaintiffs cite,

21  here, Plaintiffs themselves aggregated their claims, damages, and prayer for relief,

22  along with seeking an indivisible damages award.

23  **II.   ARTICLE III STANDING EXISTS FOR THE CLAIMS**

24  Plaintiffs next argue that this Court must remand the complaint because they

25  claim they "did not plead a concrete injury."  Doc. 21-1 at 8.  According to Plaintiffs,

26  the fact that their claims are for statutory violations and seek only statutory damages

27  means Plaintiffs did not "suffer[] any actual harm or injury as a result of the unlawful

28  spam emails" and thus no "concrete injury" sufficient to confer standing occurred. *Id.*

Plaintiffs simply encourage this Court to disregard numerous, recently-decided cases within this District, offering a strained interpretation of the Supreme Court's *Transunion LLC v. Ramirez* decision to support its "no harm" argument. *Id.* at 11-12.

## A.    Legal Standard

To have standing to sue in federal court under Article III, a plaintiff must plead, and ultimately prove, three elements: plaintiff must have (i) suffered an "injury in fact"; (ii) that is "fairly traceable" to the challenged action of the defendants; and (iii) that is likely to be redressed by a favorable outcome of the litigation. *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs' motion concerns only the injury-in-fact requirement.

At the pleading stage, courts look to the operative complaint to determine whether the plaintiff has alleged facts that, if proven, would establish injury-in-fact and the other Article III standing requirements. *Spokeo, Inc. v. Robins (Spokeo I)*, 136 S. Ct. 1540, 1547 (2016); *Warth v. Seldin*, 422 U.S. 490, 518 (1975). This same standard applies on removal. *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2016 U.S. Dist. LEXIS 123455, at *5 (N.D. Cal. Sep. 12, 2016) (in ruling on a remand motion, a court may "assume that the allegations of the complaint are true").

To establish injury-in-fact, a plaintiff must plead that she suffered an "invasion of a legally protected interest" that was "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *see also Spokeo I*, 136 S. Ct. at 1548.

## B.    Plaintiffs Alleged A Concrete Injury Sufficient for Standing

Plaintiffs' argument that they allege no concrete injury is unsustainable and, in fact, has already been roundly rejected by a court within this District in another case arising under Cal. Bus. & Prof. Code § 17529.5. In *Lynch v. AML Network Ltd.*, the District Court for the Central District of California considered and rejected substantially identical arguments as those offered here on the issue of standing. *See,*

1     *Lynch v. AML Network Ltd.,* 2021 U.S. Dist. LEXIS 187234 (C.D. Cal. Sep. 27, 2021).

2 The *Lynch* Court extensively considered whether the CASL was established to "protect

3 concrete interests" and whether the complaint alleged harm to those interests. *Id.* at *7.

4 Contrasting the CASL with Fair Credit Reporting Act provisions which required the

5 *adoption of procedures* designed to decrease the risk of disseminating false

6 information, the Court found that the CASL prohibited the *actual transmission* of

7 certain types of emails and therefore "protects the concrete interest of preventing such

8 [email] transmissions." *Lynch*, 2021 U.S. Dist. LEXIS 187234 at *8-9. The court

9 further noted that the CASL closely resembles the Telephone Consumer Protection Act

10 ("TCPA"). *Id.* The TCPA prohibits junk faxes and unsolicited marketing telephone

11 calls and, importantly, has been expressly found by the Ninth Circuit to be protecting

12 a "concrete interest" in protecting consumers from intrusive marketing. *Id; see further*

13 *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

14     That the CASL protected a "concrete interest," the violation of which is

15 sufficient to confer standing, was further supported by the language of the CASL itself,

16 according to the *Lynch* Court. Specifically, the court noted that the Legislature's

17 findings and declarations in Cal. Bus. & Prof. Code §17529 provided, in relevant part:

18
19      (e) Like junk faxes, spam imposes a cost on users, using up valuable
     storage space in e-mail inboxes, as well as costly computer band width,
20      and on networks and the computer servers that power them, and
     discourages people from using email . . .
21      (h) The "cost shifting" from deceptive spammers to Internet business
22      and e-mail users has been likened to sending junk mail with postage
     due or making telemarketing calls to someone's pay-per-minute cellular
23      phone.

24 *Lynch*, 2021 U.S. Dist. LEXIS 187234 at *10-11; *see also* Cal. Bus & Prof.

25 Code § 17529.

26     Noting that these Legislative findings "explicitly compare the harms caused by

27 spam emails to injuries caused by junk faxes and spam telephone calls which [] the

28 Ninth Circuit has recognized as injuries in fact sufficient to confer Article III standing,"

the court agreed with the *Durward* Court in concluding that § 17529.5 "codifies a substantive right to be protected from spam, and that a person who is the subject of a violation of that right sustains injuries including lost productivity and resources, annoyance, consumption of valuable digital storage space and financial costs." *Lynch*, U.S. Dist. LEXIS 187234 at *20. Because any violation of the § 17925.5 "presents the precise harm and infringes the same . . . interests the legislature sought to protect by enacting the statute," Plaintiffs' allegations that they suffered "violations of their statutory rights pursuant to [] § 17925.5" are sufficient to satisfy the concreteness requirement of Article III standing. *Silverstein v. Keynetics, Inc.,* 2018 U.S. Dist. LEXIS 189114, *23-24 (C.D. Cal. Nov. 5, 2018).

Importantly, the court in *Lynch* expressly weighed the Supreme Court's recent decision in in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), in its Article III standing analysis and found it did not change its conclusion that Plaintiffs had Article III standing. *Lynch*, 2021 U.S. Dist. LEXIS 187234, at *13-14. In *Transunion*, a class of over 8,000 people sued the credit reporting agency TransUnion, alleging it had failed to use appropriate *procedures* to ensure accuracy of the class members' credit files. 141 S. Ct. at 2200. Ultimately, the Court held that only 1,853 members of the class—those individuals whose credit file data was transmitted to third parties—had standing to sue under the Fair Credit Reporting Act. *Id*. The Court reasoned that while the remaining class members may, in fact, have had inaccurate OFAC alerts in their credit files, these plaintiffs suffered no actual harm from the failure to maintain accurate credit files because those plaintiffs' credit files were never disseminated to a third party and "the mere presence of an inaccuracy in an internal credit file, if not disclosed to a third party, causes no concrete harm." *Id.* at 2210. Ultimately, the Court held that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over the violation in federal court." *Id.*

The *Lynch* Court found that *TransUnion*, if anything, supported its conclusion as to standing, noting that *TransUnion* effectively reaffirmed *Spokeo I* in "more clearly

delineating between purely procedural violations (even if egregious) and substantive ones," since Cal. Bus. & Prof. Code § 17529.5 was a substantive provision codifying "a substantive right . . . that suffers any time a prohibited spam message is transmitted." *Lynch*, 2021 U.S. Dist. LEXIS 187234 at *13.  Here, the violation of the statute itself creates a sufficiently concrete injury to confer standing.  This is consistent with Ninth Circuit authority holding that violations of comparable statutes, the TCPA and Video Privacy Protection Act ("VVPA"), are sufficient *per se* to establish adequate concrete injury for Article III standing.  *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (holding VVPA violations *per se* confer Article III standing); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d  1037 (9th Cir. 2017) (sending unwanted text messages in violation of the TCPA sufficient to *per se* provide standing). Just as in *Lynch*, the *TransUnion* decision does not and cannot change the fact that the California Legislature intended to create a substantive right in enacting Cal. Bus. & Prof. Code § 17529.5

Neither *Greenberg v. Digital Media Solutions* nor *Blanchard v. Fluent* —both decided several years before *TransUnion* themselves—alters the correct conclusion reached by the court in *Lynch*.  In addition to being decided outside of this District, both *Blanchard* and *Greenberg*, respectfully, are built on faulty logic and statutory analysis.  In both *Blanchard* and *Greenberg*, the court's decisions were framed by its conclusion that the CASL "singles out deceptive spam" and that it prohibits only "transmission of misleading spam."  *Greenberg*, 2019 U.S. Dist. LEXIS 79561, at *3 (N.D. Cal. May 1, 2019).  In *Greenberg*, a CASL case removed to the Northern District of California, the district court noted that the plaintiffs "have not alleged that they were deceived, nor is there any indication in the papers that they were deceived," and further noting Plaintiffs' motion for remand expressly alleged they were not deceived by the spam.  *Greenberg*, 2019 U.S. Dist. LEXIS 79561 at *1.  In finding no Article III standing, the district court correctly held that the "injury the [CASL] sets out to redress" as "the transmission of misleading spam" but incorrectly imposed a

1  requirement of *actual* deception. *Id.* at *3 ("the plaintiffs have not . . . suffered the
2  injury the statute sets out to redress, because they were not deceived by the spam. . .
3  .and it's far from clear that the receipt of spam is inherently injurious in the same way
4  that Congress has deemed telemarking calls to cellphones from automated dialing
5  systems.") (*citing Blanchard*, 2018 U.S. Dist. LEXIS 156546).

6      *Greenberg's* and *Blanchard's* reasoning—the basis for the finding of no
7  standing—is deeply flawed.  In interpreting the prohibition on "deceptive" spam email,
8  the court incorrectly imposed a requirement that *plaintiffs themselves* be deceived by
9  the alleged spam to suffer an injury actionable under the CASL.  *Id.*  Because Plaintiffs
10 had not alleged that *they* were *personally* deceived, the court found no injury sufficient
11 for Article III standing.  This reasoning, shared by the other decision Plaintiffs cite,
12 *Blanchard v. Fluent, LLC*, misunderstands the statute itself.

13     Section 17529.5 prohibits sending unsolicited commercial e-mail
14 advertisements that contain or are accompanied by "falsified, misrepresented, or forged
15 header information," or that have subject lines "that a person knows would *be likely to*
16 *mislead a* recipient, acting reasonably under the circumstances, about a material fact
17 regarding the contents or subject matter of the message."  Cal. Bus. & Prof. Code §
18 17529.5(a)(2)-(3).  Neither of these provisions imposes any requirement as to the *effect*
19 on the actual recipient of a commercial email advertisement or any requirement of
20 actual deception; instead, both sections impose an *objective* or "reasonableness"
21 standard that prohibit *any* misleading commercial email advertisement with misleading
22 header information or a misleading subject line. Rather, the statute unambiguously
23 "permits a recipient of a deceptive commercial e-mail to bring suit regardless of
24 whether they were actually mislead (sic) or harmed by the deceptive message.  This
25 ensures that the use of deceptive-email will not go unpunished merely because it failed
26 to mislead its targets." *Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805,
27 829, 123 Cal. Rptr. 3d 8, 26 (2011).  Thus, Plaintiffs' argument that there is no actual
28 harm alleged because they have not alleged they were actually deceived is irrelevant

to the issue of concrete harm; the harm contemplated in the statute is the mere *transmission* and *receipt* of the unsolicited, misleading commercial email advertisements, and this concrete harm has clearly been alleged.  Compl. at ¶ 5.

Plaintiffs separately argue that because they do not allege "some type of actual monetary harm due to the unlawful emails," there is no concrete injury sufficient for Article III standing. Doc. 21-1 at 10. In other words, Plaintiffs claim that absent an economic injury, there cannot be an injury sufficient for standing. This argument was also soundly rejected in *Lynch*. There, the court noted that unlike consumer protection statutes, the harms identified in § 17529 do not relate to consumers' purchases and that to require an economic injury would "misidentify the injury" alleged. *Lynch*, 2021 U.S. Dist. LEXIS 187234 at *12. Since the "substantive right § 17529.5 (sic) is protection from unwanted spam emails—not necessarily protection from financial harm," the court found, an economic injury is not necessary for a concrete harm sufficient for standing. *Id.* Rather, because the statute protects against the *transmission and receipt* of unsolicited commercial advertisements, it is the "transmission and receipt of these emails—as alleged by Plaintiffs—[that] constitutes an injury in fact sufficient to confer Article III standing." *Id.* at *13 (*quoting Silverstein v. Keynetics, Inc.*, 2018 U.S. Dist. LEXIS 189114, *23-24 (C.D. Cal. Nov. 5, 2018) ("Cal. Bus. & Prof. Code § 17529.5 'identifies a substantive right . . . that suffers *any time*' a prohibited spam is transmitted.")) (internal citations omitted).

III.   **CONCLUSION**

As set forth above and in Defendants' Notice of Removal, this Court properly has jurisdiction over this matter and each claim therein and it should deny Plaintiffs' motion to remand in its entirety.

///

///

///

///

1

2   Dated: January 3, 2022

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**LAW OFFICE OF ARYEH KAUFMAN**

By:    /s/ Aryeh Kaufman
       Aryeh Kaufman. Esq.
       *Attorney for Defendants,*
       PHYTAGE LABS, LLC AND FIGHT
       AGE LABS, LLC

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND