**COHELAN KHOURY & SINGER**
Timothy Cohelan (SBN 60827)
tcohelan@ckslaw.com
Isam C. Khoury (SBN 58759)
ikhoury@ckslaw.com
Kristina De La Rosa (SBN 279821)
kdelarosa@ckslaw.com
605 C Street, Suite 200
San Diego, California 92101
Telephone: (619) 595-3001/Facsimile: (619) 595-3000

**CARPER LAW, PLLC**
Jamie L. Carper, Esq. (SBN: 337225)
3651 Lindell Road, Suite D1211
Las Vegas, NV 89103
Telephone: (702) 582-9374
jamie@carperlawfirm.com

**LAW OFFICE OF JOSHUA M. CINTAS**
Joshua M. Cintas, Esq. (SBN: 334594)
10620 Treena Street, Suite 230 - #6821
San Diego, CA 92131
Telephone: (858) 395-2646
josh@lawofficeofjoshuamcintas.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY-LISA GUILLAUME, an individual; RYAN ARTOLACHIPE, an individual; JESSICA CARMELLO, an individual; CASSONDRA CARPER, an individual; MICHAEL DOREN, an individual; RAVEN EVANS, an individual; RYAN GARCIA, an individual; MESSIAH JOHNSON, an individual; ROBERT LAICH, an individual; BRYCE MACCHARLES, an individual; CHRISTOPHER TIJERINA, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> FIGHT AGE LABS, LLC, a Wyoming limited liability company; PHYTAGE LABS LLC, a Florida limited liability company; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: 2:21-cv-09289-CAS-JPRx <br><br> **PLAINTIFFS' NOTICE OF NON-OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** <br><br> Hearing Date:  January 31, 2022 <br> Time:  9:00 a.m. <br> Judge:  Hon. Mark C. Scarsi <br> Ctrm:  7C |

**1**

NOTICE OF NON-OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION & OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## **TABLE OF CONTENTS**

*I.    INTRODUCTION* ................................................................................................5

*II.    NON-OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF*

*PERSONAL JURISDICTION* .............................................................................6

   A.    Relevant Facts ..........................................................................................6

   B.    Discussion ................................................................................................8

*III.    OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A*

*CLAIM* ................................................................................................................9

   A.    The Header Information Violates Bus. & Prof. Code section 17529.5(a)(2) ....................9

      *1.    Defendants Misrepresent the Key Holding of Rosolowski—which Should Be*

      *Interpreted Narrowly* ...........................................................................9

      *2.    Senders' Identities were Not Readily Ascertainable from the Body of the Emails* .......10

      *3.    The Domain Name Allegations are Sufficient to State a Claim* ....................................13

      *4.    The From Names In Each of the Emails Failed To Identify the Sender or Advertiser* ..16

      *5.    The 17529.5(a)(2) Claim Is Not Preempted* ..................................................................19

   B.    The Email Subject Lines Are Likely To Mislead a Reasonable Recipient ......................21

   C.    In the alternative, Plaintiffs can amend the Complaint To Fix Any Deficiencies ............22

*CONCLUSION* ..........................................................................................................22

NOTICE OF NON-OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION &
OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

1

2

## **TABLE OF AUTHORITIES**

3

### **Cases**

4

5

*Aaron Hicks v. One Technologies, LLC, et al,* Case No.: 8:20-CV-01856 (C.D. Cal 2020) ..........8

6

*Asis Internet Servs. v. Member Source Media, LLC,* No. C-08-1321 EMC, 2010 U.S. Dist.

7

    LEXIS 47865 (N.D. Cal Apr. 20, 2010)........................................................................15, 16, 18

8

*Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083 (1st Dist. 2012)...........................................passim

9

*Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (4th Dist. 2018).....................................................11

10

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1234-35 (9th Cir. 2011) ................8, 23

11

*Etaliq, Inc. v. Cisco Sys., Inc.*, No. CV-11-3672-GAF-FFMx, 2011 WL 13220445, at *8 (C.D.

12

    Cal. July 20, 2011)..................................................................................................................9

13

*Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008) ......................................................19

14

*Ford Dealers Association v. Department of Motor Vehicles*, 32 Cal. 3d 347, 356-57 (1982)......12

15

*Free Speech Coalition Inc. v. Shurtleff*, No. 2:05CV949DAK, 2007 U.S. Dist. LEXIS 21556 at

16

    *29-30 (D. Utah Mar. 23, 2007)...........................................................................................20

17

*Gordon v. Virtumundo, Inc.,* 575 F.3d 1040 (9th Cir. 2009).............................................15, 20, 21

18

*Greenberg, et al. v. Digital Media Solutions, LLC,* 65 Cal.App.5th 909 (1st Dist. 2021).....passim

19

*Hypertouch v. ValueClick Inc.*, 192 Cal. App. 4th 805 (2d Dist. 2011).......................................20

20

*Jevne v. Superior Court*, 35 Cal. 4th 935, 949 (2005)..................................................................19

21

*Joshua Grossman v. One Technologies, LLC, et al,* Case No.: 2:20-CV-9077 (C.D. Cal 2021)....8

22

*Kleffman v. Vonage Holdings Corp.,* 49 Cal.4th 334 n. 5 (2010) ..........................................13, 16

23

*Manufacturers Life Ins. Co. v. Superior Court*, 10 Cal. 4th 257, 274 (1995) .............................12

24

*Newcal Indus. V. Ikon Office Solution,* 513 F.3d 1038, 1053 (9th Cir. 2008)..............................22

25

*Original Creatine Patent Co., Ltd. v. MET-RX USA, Inc.*, 387 F. Supp. 2d 564, 566 (E.D. Va.

26

    2005)....................................................................................................................................8

27

*Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403 (2d Dist. 2014)........................passim

28

NOTICE OF NON-OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION &
OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

*Silverstein v. Keynetics Inc.,* 192 F.Supp.3d 1045 n. 5 (2016)..................................................16, 18

*STM Grp., Inc. v. Gilat Satellite Networks Ltd.*, No. SACV-11-0093- DOC-RZx, 2011 WL
   2940992, at *10 (C.D. Cal. July 18, 2011) .........................................................................9

*White Buffalo Ventures LLC v. University of Texas at Austin,* 420 F.3d 366, 369, 372-3 (5th Cir.
   2005).........................................................................................................................................21

*Williams v. Gerber Products Company*, 552 F.3d. 934, 939-40 (9th Cir. 2008) .........................11

<u>**Statutes**</u>

28 U.S.C. § 1404(a) .......................................................................................................................8, 9

Business & Professions Code § 17529.5 ......................................................................................passim

CAN-SPAM Act of 2003 .............................................................................................................passim

Fed. R. Civ. P. 15(a)(2) ..................................................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF NON-OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION &
OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiffs MARY-LISA GUILLAUME, RYAN ARTOLACHIPE, JESSICA CARMELLO, CASSONDRA CARPER, MICHAEL DOREN, RAVEN EVANS, RYAN GARCIA, MESSIAH JOHNSON, ROBERT LAICH, BRYCE MACCHARLES, and CHRISTOPHER TIJERINA (collectively, "Plaintiffs") hereby submits this Notice of Non-Opposition to Defendants FIGHT AGE LABS, LLC and PHYTAGE LABS LLC's (collectively, "Defendants") (collectively referred to as the "Parties") Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Opposition to Defendants' Motion To Dismiss Complaint for Failure to State a Claim scheduled to be heard on January 31, 2022 in Department 7C of the above-captioned Court (this "Action").

## I.   **INTRODUCTION**

In order to preserve Plaintiffs' ability to litigate this matter, Plaintiffs request that this Court transfer venue of this Action to the U.S. District Court for the Western District of Texas where the Action would have been timely if filed there initially.

Further, Plaintiffs adequately pled violations of California's robust anti-spam law, Business & Professions Code § 17529.5 ("Section 17529.5"). In this case, Plaintiffs collectively received over 199 emails advertising Defendants' various websites. *See* Complaint, generally. All of the emails contained numerous misrepresentations and falsehoods throughout, in violation of Section 17529.5. Plaintiffs alleged that every spam in this Action involves material misrepresentations regarding who actually sent the emails. Further, many of the spams contain misleading Subject Lines designed to mislead consumers about the Defendants' products.

The crux of Defendants' 12(b)(6) motion relies on the mistaken premises that: a) there is no difference between an email's *advertiser* and *sender*, and b) that any misrepresentation can be cured by simply identifying the *advertiser* in an email's body.

The facts and allegations in this case are similar to those in *Greenberg, et al. v. Digital Media Solutions, LLC,* 65 Cal.App.5th 909 (1st Dist. 2021) and *Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083 (1st Dist. 2012) and quite distinguishable from those in *Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403 (2d Dist. 2014) upon which Defendants rely. Here, none of the spams identify the sender in the body, as discussed in *Rosolowski.* Here, unlike in *Rosolowski,* the

advertisers are not the senders of the emails are separate entities—and instead, like in *Greenberg*, the advertiser hired "affiliates" or "publishers" to send the emails. Here, like in *Greenberg* and *Balsam*, the spams all contain generic From Names that misrepresent who the emails are from, and were sent from domain names that do not identify Defendants or the senders on their face and are not readily traceable through the WHOIS database. The instant Complaint alleges material falsity, so the federal CAN-SPAM Act (15 U.S.C. § 7701 *et seq.*) does not preempt Section 17529.5.

Defendants' 12(b)(6) motion omits and misrepresents facts and law, and the bases and rulings of various California and federal cases. This Court should overrule the Defendants' 12(b)(6) motion in all respects.

## II.   NON-OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.   Relevant Facts

Plaintiffs Mary-Lisa Guillaume, Ryan Artolachipe, and Robert Laich are each natural persons that are citizens of the State of California and domiciled in the County of Los Angeles. Defendants' Notice of Removal ("NOR") ¶ 8. Plaintiffs Jessica Carmello, Raven Evans, Ryan Garcia, and Messiah Johnson are each natural persons that are citizens of the State of California and domiciled in the County of San Bernardino. NOR ¶ 9.

Defendant Fight Age Labs, LLC is wholly owned by My Lifestyle Solutions LLC. NOR ¶ 13; Declaration of George Rivera in Support of Defendants' Notice of Removal ("NOR Rivera Decl.") ¶ 2. The sole member of My Lifestyle Solutions LLC is Make Good Media, LLC, a limited liability corporation formed under the laws of the State of Texas. NOR ¶ 14; NOR Rivera Decl. ¶ 3. The sole member and owner of Make Good Media LLC is Lone Star Media Partners, LP, a limited partnership formed and operating within the State of Texas. NOR ¶ 15; NOR Rivera Decl. ¶ 4. Lone Star Media Partners, LP, is a citizen of the State of Texas because it is owned by Michelle Rivera, a natural person that is a citizen of the State of Texas; George Rivera, a natural person that is a citizen of the State of Texas; Celero Pros, Inc., a domestic "C" corporation incorporated under the laws of the State of Texas having a principal place of business in the State of Texas; and the Lifestyle Solutions Trust, a Trust formed pursuant to the laws of the State of Texas with a Trustee

that is a citizen of the State of Texas. NOR ¶ 16; NOR Rivera Decl. ¶¶ 5-7. The sole Trustee of the Lifestyles Solutions Trust is George Rivera, a natural person that at all relevant times was a citizen of the State of Texas. NOR ¶ 17; NOR Rivera Decl. ¶ 7. Accordingly, for purposes of 28 U.S.C. § 1332, Fight Age Labs, LLC is a citizen of the State of Texas. NOR ¶ 18.

Defendant Phytage Labs, LLC is a Texas limited liability company with a principal place of business in Austin, TX. Declaration of George Rivera In Support of Defendant Phytage Labs, LLC and Fight Age Labs, LLC's Notice of Motion and Motion To Dismiss Plaintiff's Complaint Pursuant To FRCP 12(b)(2) and 12(b)(6) ("MTD Rivera Decl.") ¶ 3. Defendant Phytage Labs, LLC is wholly owned by My Lifestyle Solutions, LLC. NOR ¶ 19; NOR Rivera Decl. ¶ 8. The sole member of My Lifestyle Solutions LLC is Make Good Media, LLC, a limited liability corporation formed under the laws of the State of Texas. NOR ¶ 20; NOR Rivera Decl. ¶ 9. The sole member and owner of Make Good Media LLC is Lone Star Media Partners, LP, a limited partnership formed and operating within the State of Texas. NOR ¶ 21; NOR Rivera Decl. ¶ 10. Lone Star Media Partners, LP, is a citizen of the State of Texas because it is owned by Michelle Rivera, a natural person that is a citizen of the State of Texas; George Rivera, a natural person that is a citizen of the State of Texas; Celero Pros, Inc., a domestic "C" corporation incorporated under the laws of the State of Texas having a principal place of business in the State of Texas; and the Lifestyle Solutions Trust, a Trust formed pursuant to the laws of the State of Texas with a Trustee that is a citizen of the State of Texas. NOR ¶ 22; NOR Rivera Decl. ¶¶ 11-13. The sole Trustee of the Lifestyles Solutions Trust is George Rivera, a natural person that at all relevant times was a citizen of the State of Texas. NOR ¶ 23; NOR Rivera Decl. ¶ 13. Accordingly, for purposes of 28 U.S.C. § 1332, Phytage Labs, LLC is a citizen of the State of Texas. NOR ¶ 24.

Defendants Fight Age Labs, LLC and Phytage Labs, LLC do not send any emails to consumers with whom it does not have an existing or current business relationship. MTD Rivera Decl. ¶ 6. Defendants Fight Age Labs, LLC and Phytage Labs, LLC rely solely on independent contractors known as "publishers" or "affiliates" to send emails advertising the Defendants' products and services. MTD Rivera Decl. ¶ 7.

///

7

NOTICE OF NON-OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION &
OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### B.      Discussion

To adequately protect Plaintiff's ability to litigate this Action, Plaintiffs request that this Court transfer venue of this Action to the U.S. District Court for the Western District of Texas where the Action would have been timely if filed there initially. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Court should exercise its power to transfer a case in order "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Original Creatine Patent Co., Ltd. v. MET-RX USA, Inc*., 387 F. Supp. 2d 564, 566 (E.D. Va. 2005) (internal quotations omitted).

On at least two separate occasions the U.S. District Court for the Central District of California has transferred venue, as opposed to dismiss a complaint for lack of personal jurisdiction, where state claims brought under Business & Professions Code section 17529.5 were removed to federal court. *See Joshua Grossman v. One Technologies, LLC, et al,* Case No.: 2:20-CV-9077 (C.D. Cal 2021); *Aaron Hicks v. One Technologies, LLC, et al,* Case No.: 8:20-CV-01856 (C.D. Cal 2020). In both of these unpublished matters, the defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction. *Id.* Instead of granting dismissal in either case, this Court transferred venue to the Northern District of Texas—the district in which the defendant's principal place of business sits. *Id.*

In the alternative, Plaintiff requests that this Court exercise its discretion to condition a dismissal *without* prejudice on the Defendant's waiver of a statute of a limitations defense in the alternative forum. The Ninth Circuit has acknowledged that district courts have the discretion whether or not to impose conditions incident to *forum non conveniens* dismissals. *See Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1234-35 (9th Cir. 2011). Moreover, the Ninth Circuit has affirmed *forum non conveniens* dismissals that addressed statute of limitations concerns by requiring waiver in the foreign forum, *Carijano*, 643 F.3d at 1235, and district courts in this circuit routinely impose numerous conditions to ensure a party's cooperation with the foreign forum. *See*, *e.g*., *Etaliq, Inc. v. Cisco Sys., Inc*., No. CV-11-3672-GAF-FFMx, 2011 WL 13220445, at *8 (C.D.

**8**

NOTICE OF NON-OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION & OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Cal. July 20, 2011); *STM Grp., Inc. v. Gilat Satellite Networks Ltd.*, No. SACV-11-0093- DOC-RZx, 2011 WL 2940992, at *10 (C.D. Cal. July 18, 2011).

For all the foregoing reasons, the Court should transfer this Action to the Western District of Texas under 28 U.S.C. § 1404(a). In the alternative, the Court should enter an order dismissing this Action *without* prejudice on the condition that Defendant agree to waive any statute of limitations defense it might raise.

## III.   OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. The Header Information Violates Bus. & Prof. Code section 17529.5(a)(2)

"Section 17529.5(a)(2) makes it unlawful as follows to send e-mail advertisements containing certain falsified or misrepresented header information: '(a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances: [¶] ... [¶] (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.'" *Balsam v. Trancos,* 203 Cal.App.4th 1083, 1092 (2012).

> 1. *Defendants Misrepresent the Key Holding of Rosolowski—which Should Be Interpreted Narrowly*

Defendants rely heavily on *Rosolowski* in its Motion To Dismiss, but *Rosolowski* is based on very different facts and claims. The key ruling from *Rosolowski* states that:

> a header line in a commercial e-mail advertisement does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the e-mail, *or* merely because it does not identify an entity whose domain name is traceable from an online database, *provided the **sender's** identity is readily ascertainable from the body of the e-mail, as was the case here*.

*Id.* at 1407 and 1416 (emphasis added). However, Defendants misrepresent this key ruling when it states that *Rosolowski* refers to identifying "senders and/or advertisers," Motion To Dismiss,

22:13-18, *passim;* even though it expressly refers only to *senders*. Defendants presumably misstated *Rosolowski* because it must accept as true Plaintiffs' allegation that the senders are not identified in the body, so Defendants claim that *it*–the advertiser–is identified (which it is not). But California law distinguishes between advertisers and senders: "There is a need to regulate the advertisers who use spam, as well as the actual spammers [ ]." Bus. & Prof. Code § 17529(j).

### 2.   _Senders' Identities were Not Readily Ascertainable from the Body of the Emails_

In *Rosolowski*, the plaintiff alleged violations of Section 17529.5(a)(2) based on the From Lines, and violations of (a)(3) based on the Subject Lines. Specifically, the spams' From Names were "Proactiv" and "Wen Haircare," which were defendant Guthy-Renker's registered trademarks and brand names. *Id.* at 1407. The emails' Subject Lines contained offers for free shipping and gifts. *Id.* at 1417. The emails' bodies made it clear that Guthy-Renker was both the advertiser and the sender. *Id.* at 1416; *see also Greenberg,* 65 Cal.App.5th at 919 (The circumstances in *Rosolowski* were different than the circumstances in *Balsam* because the sender there was also the actual advertiser, and its identity was disclosed in the body of the e-mail).

The trial court in *Rosolowski* compared Guthy-Renker's use of its brand names ProActiv and Wen Hair Care as From Names to hypothetical General Motors Corporation spams with the From Name "Buick" – which were not material misrepresentations. *Id.* at 1409. The court held that when the *sender* is identifiable in the body of an email, it is not a misrepresentation to use an unofficial name in the From Name along with an untraceable domain name. *Id.* at 1416. The court further held that the Subject Lines were explicitly conditional offers of free shipping, clarified by purchase requirements in the bodies, and were therefore not misleading under (a)(3). *Id.* at 1417.

The defendant in *Balsam* made a similar argument—that each email in dispute included the advertiser's physical address. *Balsam,* 203 Cal.App.4th 1083 n.16 (2012). However, the Court reasoned that when the sender and advertiser are unrelated entities, including the advertiser's purported address does not affect whether the sender's identity is falsified or misrepresented." *Id.*

Notwithstanding *Rosolowski*'s reference to *senders* in the body, Defendants seem to believe that identifying the *advertiser* somehow cures any and all other misrepresentations and falsehoods. Defendants' Motion To Dismiss 22:4-18. Defendants desperately attempt to mislead

this Court with this argument first by omitting the *Balsam* and *Greenberg* appellate decisions altogether, and then by stating "Plaintiffs appear to concede that there cannot be a violation of §17529.5(a)(2) if there is information in the body of the email which could be used to identify the sender *or advertiser*" while citing to the Complaint at ¶ 84. Defendants' Motion To Dismiss 22:14-18. However, nowhere in paragraph 84 of the Complaint does the word "advertiser" appear. Of course, Defendants do not wish to attempt to distinguish *Balsam* and *Greenberg* because this case law is clearly against their position.

Defendants have not and cannot point to any authority supporting the notion that subsequent truth can cure prior falsity. Indeed, California law on false advertising is consistent with the notion that misrepresentations cannot be "cured" by subsequent truth. *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (4th Dist. 2018), citing with approval *Williams v. Gerber Products Company*, 552 F.3d. 934, 939-40 (9th Cir. 2008) (ruling based on California law).

Plaintiffs allege that Defendants' marketing agents sent the spams at issue in this Action. Complaint at ¶¶ 11, 27, 32, 42, 54, 109-112. Defendants never dispute these allegations. *See* Defendants' Motion To Dismiss, generally. Therefore, Defendants' reliance on *Rosolowski*'s discussion of whether the *sender* is identifiable in the body of the emails is misplaced. Motion To Dismiss 21:15 to 23:9. Even if Defendants were the sender, *Rosolowski* offers no support for Defendants' argument that subsequent truth (identifying the sender in the body) cures initial misrepresentations in the From Names. That is because *Rosolowski* held that the use of Guthy-Renker's brands Wen Hair Care and ProActiv in the From Names were not misrepresentations in the first place, just as the brand name "Buick" in the From Name instead of the corporate name General Motors Corporation would not be a misrepresentation. 230 Cal. App. 4th at 1409. Plaintiff adequately alleges that "the sender's identity is not readily ascertainable from the body or content of the spam emails, which did not readily identify the actual sender of the e-mails or Defendant." Complaint ¶¶ 71, 63, 75.

Further, though irrelevant to the analysis since it is the sender's identity that cannot be misrepresented, Plaintiff alleges that there is "no information in the body which could be used to readily identify the sender or advertiser."  Complaint ¶ 62. Thus, Defendants' argument that

**11**

NOTICE OF NON-OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION & OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

"Defendants' websites *bloodpressure911.com, getprostate911.com, immunity911.com, nervecontrol911.com,* and *rescuehair911.com*" were identified in the body of the emails is false. Motion To Dismiss 22:25 to 23:9.

The Defendants' argument that the emails' links to Defendants' various websites provided Plaintiffs with the ability to readily ascertain Defendants' identities misstates the decision in *Rosolowski. Id.* Although *Rosolowski* observed that those spams linked to Guthy-Renker's websites, 230 Cal. App. 4th at 1416, that had no bearing on the key ruling, which is expressly limited to *identifying the sender in the body of the spams*. The court never said that hyperlinking to the advertiser's website cures false/misleading headers. *See Rosolowski*, generally.

Ultimately, a commercial email must point consumers to the advertiser, generally by linking to the advertiser's website. Section 17529.5 prohibits advertisers from using falsity and misrepresentations to entice consumers. If this Court were to rule that a link to a Defendants' various websites cure both false/misleading header information and the absence of the sender's identity in the body, such a ruling would make *all* spams legal under Section 17529.5(a)(2) and render (a)(2) meaningless. But "[w]ell-established canons of statutory construction preclude a construction which renders a part of a statute meaningless or inoperative." *Manufacturers Life Ins. Co. v. Superior Court*, 10 Cal. 4th 257, 274 (1995). *See also Ford Dealers Association v. Department of Motor Vehicles*, 32 Cal. 3d 347, 356-57 (1982) (civil statutes for the protection of the public are generally broadly construed in favor of that protective purpose). The fact that the emails link to Defendants' various websites simply confirms that they are in fact Defendants' emails, which is not in dispute.

Plaintiffs alleged that the bodies of the spams do not identify the senders. Complaint at ¶¶ 62-63,71, 73. In fact, Defendants never argue in its Motion To Dismiss that any of the From Names or sender domain names identifies the senders either on its face or by the use of fanciful names. Further, Defendants do not point to any information contained in the emails' bodies that identify the sender of the emails. Accordingly, *Rosolowski* has no applicability to this Action, and Defendants' arguments based on *Rosolowski* must fail.

///

### 3.  *The Domain Name Allegations are Sufficient to State a Claim*

Plaintiffs alleged and specifically pleaded all of the sender domain names used were unregistered non-existent and forged domains, proxy registered, privately registered, and fraudulently registered. Complaint ¶¶ 75-81.

Section 17529 does not define the term "header information," but the California Supreme Court applied a definition borrowed from the federal CAN-SPAM Act of 2003, which defines "header information" as "the source, destination, and routing information attached to an electronic mail message, *including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message.*" *Kleffman v. Vonage Holdings Corp.,* 49 Cal.4th 334 n. 5 (2010) (citing 15 U.S.C. § 7702(8). In *Balsam,* the Court found a legal violation of Section 17529.5 "sending out e-mails using domain names on the 'From' line that were untraceable to the sender . . ." *id* at 1110. Hence, the sender domain is "the originating domain name" and part of the "header information."

"[H]eader information in a commercial e-mail is falsified or misrepresented for purposes of [section 17529.5, subdivision (a)(2)] when it uses a sender domain name that neither identifies the actual sender on its face nor is readily traceable to the sender using a publicly available online database such as WHOIS." *Greenberg,* 65 Cal.App. 5th at 918 (citing *Balsam, supra,* 203 Cal.App.4th at pp. 1093, 1101, italics omitted). The Court in *Greenberg* "decided that there was 'good reason' to conclude that 'a commercial e-mailer's deliberate use of untraceable, privately registered domain names to conceal its identity' violates subdivision (a)(2), given that each of the millions of spam sent each month 'has the potential to cause harm to the recipient, ranging from mere annoyance or offense to more tangible harms such as inducing the recipient to visit Web sites that place malware or viruses on their computer, defraud them out of money, or facilitate identi[t]y theft." *Id* (citing *Balsam,* at 1098-1099).

Here, none of the 199 emails involved contained a sender domain name which identifies the actual sender on its face or are readily traceable to the sender.

The CAN-SPAM Act clearly states that header information can be materially deceptive when the email "*includes an originating electronic mail address, domain name, or Internet*

*Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations"* 15.U.S.C. § 7704(a)(1)(A). The fraudulently registered sender domains are *nexpers.com, doined.com, saripredau.com, whospean.com, lenogooley.com, yeariary.com, convictish.com, compatiential.com, gormoney.com, minnasual.com, exampulare.com, goommentrapar.com, metroscopies.com, intellitur.com, everacy.com, abulgar.com, colsod.com, revelsed.com, leariist.com, biliect.com, pantial.com, unizims.com, ristelead.com, hightity.com, ratoring.com, usedney.com, gainstruct.com, ministence.com, foundatin.com, voluntern.com, absental.com, pectinsitherit.com, grungerhaps.com, bishopriat.com, hierogen.com, groblis.com, rivisobral.com, trunnaeare.com, thattheithe.com, pappowelling.com, huffishisr.com, vardpial.com, vouslizonstra.com, memotenn.com, surmous.com, aipposed.com, whetherior.com, forcuir.com, earldomestivate.com, evenisms.com, schospanhabe.com, intercular.com, ampuses.com, desitatory.com, vanians.com, gafinethus.com, butiola.com, tearostupp.com, goverijdom.com, papalaces.com, founclude.com, sacredited.com, inuess.com, whispris.com, hammedicated.com, airporalkan.com, litioularens.com, gathereign.com, hologicata.com, spairing.com, perihelics.com, foutist.com, povembers.com, recissiat.com, diplothis.com, lationard.com, yogizery.com, whilok.com, qatural.com, witholdiers.com, smuccathop.com, vowelsh.com, hambaniomp.com, estenhitty.com,* and *debabasthy.com.* Complaint ¶ 79. The intentional use of falsified WHOIS information is not only a violation of all of Defendants' contracts with the domain registrars—but also renders the emails illegal as a matter of law—since the use of these fraudulently registered domain names were all obtained by false, or fraudulent pretenses or representations. Plaintiffs alleged that these domains were fraudulently registered because the each of these domains were registered to nonexistent addresses and nonexistent individuals. Complaint ¶ 80. Not only do these domains not identify the actual sender on its face or are readily traceable to the actual sender—but the registrations are designed to mislead email recipients and authorities as to the identity of the sender. For example, if an email recipient sent an opt-out letter to any of the fake registrant addresses listed for any of these domains—the letter would be returned to the email recipient.

The unregistered domain names used in forged sender addresses *flawsome.monster,*

**14**

1   *5xqgiiz.de*, *khqbanb562qdkmpwv.de*, *iigee4ase1zt5wm.us*, *zjgqaruhq39obxa.us*, *shop.eu*,

2   *f6u86slda.com*, *vzckj0j.de*, *thegoodwords.info*, and *awsisawoseme.com*. Complaint ¶ 77. Not only

3   do these forged and unregistered domains not identify the actual sender on its face or are readily

4   traceable to the actual sender—but the registrations are designed to mislead email recipients and

5   authorities as to the identity of the sender. For example, if an email recipient wished to send an

6   opt-out letter to any of the actual senders—the email recipient would be unable to because the

7   registrant information would be unavailable on the WHOIS database.

8        The privately registered sender domains are *nausea.monster*, *selliteration.com*,

9   *reeneand.com*, *chavabobe.com*, *novemensive.com*, *inesinobe.com*, *rugeds.com*, *exerb.com*,

10  *chriasorg.com*, *goearo.com*, *alatred.com*, *softengins.com*, *ageonsidge.com*, *digitalpound.online*,

11  *persigne.com*, *fika6.com*, *krsmailz.com*, *jambada.com*, *challengeschildren.com*, *royaldisk.com*,

12  *comtetgrey.com*, *ayelnine.com*, *starthistoryfacts.com*, *caloachio.com*, *lifevalentine.com*,

13  *jobsoppurtunity.com*, *whiiteandblack.com*, and *mrbookys.com*. Complaint ¶ 78. Plaintiffs have

14  alleged that these sender domains are privately registered for the purpose of concealing the

15  sender's identity. *Id.*

16       Defendants argue that untraceable sender domain names do not provide a violation of

17  Section 17529.5, and rely on the unpublished and non-binding decision regarding privately

18  registered domain names in *Asis Internet Servs. v. Member Source Media, LLC,* No. C-08-1321

19  EMC, 2010 U.S. Dist. LEXIS 47865 (N.D. Cal Apr. 20, 2010). Motion To Dismiss 23:20-23.

20  However, this decision was *only* in regards to privately registered domains—and does not address

21  the domains registered to fake persons with fake addresses, nonexistent domain names, and proxy

22  registered domains. The *Balsam* Court did not find *Member Source* persuasive on the question of

23  traceability because the *Member Source* court did not address the issue. *Balsam,* at 1100. "In

24  *Member Source,* a federal magistrate judge found a commercial e-mailer's use of multiple,

25  privately registered domain names in its headers was not false or deceptive, and a section 17529.5

26  claim based on that conduct was therefore preempted by the CAN-SPAM Act." *Id.* For that

27  conclusion, *Member Source* relied exclusively on *Gordon v. Virtumundo, Inc.,* 575 F.3d 1040 (9th

28  Cir. 2009), "finding the plaintiff's allegations in *Gordon* and those in the case before it were

indistinguishable" but the court "made no mention of the plaintiff's concession in *Gordon* that the domain names the sender used were traceable to the sender using a WHOIS search, and did not address the apparent significance this had for the *Gordon* panel." *Balsam,* at 1100. Further, the *Member Services* court found the claim preempted because the header information did not clearly identify the defendant as sender. *Member Source,* at *4; *see also Silverstein v. Keynetics Inc.,* 192 F.Supp.3d 1045 n. 5 (2016). Here, the Plaintiffs have not made any such allegation that a violation occurred due to the header information not clearly identifying the defendant as sender—but instead Plaintiffs pleaded that the use of untraceable sender domain names misrepresent who sent the emails. Complaint ¶ 76.

The Defendants also rely on *Kleffman v. Vonage Holdings, Corp.,* 49 Cal.4th 334, 340 (2010). However, the plaintiff in *Kleffman conceded* the domain names used in the challenged e-mails "actually exist[ed] and [were] technically accurate, literally correct, and fully traceable to Vonage's marketing agents." *Id.* Here, none of the sender domain names had accurate, correct, or otherwise fully traceable to Defendants' marketing agents.

Again, the bodies of the emails do not include sufficient information to ensure Defendants' marketing agents were readily identifiable. And though irrelevant to the analysis, the bodies of the emails do not include sufficient information to identify the advertisers either.

    4.   *The From Names In Each of the Emails Failed To Identify the Sender or Advertiser*

Plaintiffs allege that the spams contain false From Names and untraceable domain names. Complaint at ¶¶ 59-73.

The Plaintiffs alleged that the emails at issue include generic From Names—"Coronavirus Update," "Your Prostate," "Ringing Ears," "Heal Yourself," "Your Knee Pain," "Tinnitus Ringing Ears," "Your_pee," "Cure Diabetes," "Diabetic Health," "Kill Joint Pain Now," "Keto911," "Your aging joints," "Fight Tinnitus Now," "Prostate Warning," "Prostate Discovery," "Nerve damage WARNING," "Ringing in the Ears," "Natural pain fix," "Cut 1⁄2 your belly," "Nerve Pain?," "Save Your Prostate," "911Tinnitus," "Toxic Overload," "Dr. Tinnitus, M.D.," "Dr. Vision MD," "Dr. Fungus," "Joint Health," "Hair Head," "stiff blood vessels," "Your blood pressure," "Ear Ringing Problems," "Late Night Peeing," "Nerve Control 911," "Dr. recommended," "Enlarged

Prostate," "Stop ringing in the ears," "avoid turmeric without THIS," "Tinnitus Destroyer," "Diabetic Health," "Prostate_WARNING," "Mouth virus," "Knee Fix," "Your Nerve Pain," "Prostate Problems?," "brycemac77," "Fungus Free," "Lose_weight_now," "Online doctors," "Fungus Destroyer," "Blood Sugar Fix," "Prostate," "Dr. Keto MD," "Nerve_pain," "Dr. Fungus," "1 Neuropathy 'Trick' Reverses Diabetic Nerve Pain? -Try Tonight," "Nerve_Pain_Fix," "Nerve_Pain_Relief," "FightTinnitusNow," and "Saw Palmetto." Complaint ¶ 68.

Even if the instant spams identified the senders in the body, which they do not, the instant From Names listed above are generic, and the question of generic From Names was not before the *Rosolowski* court. Rather, the *Rosolowski* plaintiffs objected to the From Names "Proactiv" and "Wen Hair Care" because they are not "companies." 230 Cal. App. 4th at 1407, 1415. However, Proactiv and Wen Hair Care are well-known brands and trademarks with their own websites (*www.proactiv.com* and *www.wenhaircare.com*). At the time of the *Rosolowski* litigation, the websites, domain names, and trademarks clearly identified Guthy-Renker. Therefore, unlike the generic From Names in *Balsam, infra,* and this case, the From Names in *Rosolowski* were neither false nor misrepresented. But Defendants do not and cannot plausibly allege that the generic From Names are readily associated with Defendants. Indeed, these From Names could just as easily refer to any of Defendants' competitors. *Rosolowski* should be limited to its facts; the court permitted trademarks/well-known brands like "Proactiv" and "Wen Hair Care" but did not consider generic From Names.

Having established that *Rosolowski* is inapplicable to this case, the California appellate case *Balsam* establishes the standards by which this Court must evaluate whether Plaintiffs have stated claims for violations of Section 17529.5. In *Balsam*, the unlawful spams were sent from generic From Names that did not identify anyone. The trial court ruled, and the court of appeal affirmed in all respects, that generic From Names violate the statute because they misrepresent *who* the emails are from:

> ... The seven [ ] emails do not truly reveal who sent the email . . . . The [ ] "senders" identified in the headers of the [ ] seven emails do not exist or are otherwise misrepresented, namely Paid Survey, Your Business, Christian Dating, Your Promotion, Bank Wire Transfer Available, Dating Generic, and Join Elite. . . . . Thus the sender

information ("from") is misrepresented.

203 Cal. App. 4th at 1088, 1090-91, 1093. More specifically, *Balsam* confirmed that generic From Names that "do not exist or are otherwise misrepresented when they do not represent any real company and cannot be readily traced back to the true owner/sender" violate the statute. *Id.* at 1093.

Even if generic From Names do not by themselves provide a cause of action under Section 17529.5, courts have consistently considered the nature of From Names as to whether an email is false or deceptive. In *Balsam,* one of the e-mails included a From Name purportedly from "eHarmony"—an actual, existing company—although the return e-mail address, eHarmony@minecyclic.com, referenced a domain name privately registered by Trancos, not one belonging to eHarmony. *Id.* at 1091. "The trial court found all of the e-mails except the eHarmony e-mail violated section 17529.5, subdivision (a) (2) (hereafter section 17529.5(a)(2))." *Id.* at 1093. Thus, an email that contains a From Name that accurately identifies the advertiser with a privately registered sender domain name, a claim under Section 17529.5(a)(2) might be defeated. Here, none of the generic From Names identify the Defendants.

As discussed above, Plaintiffs allege that the sender domain names are untraceable because they are either proxy registered, privately registered, fraudulently registered, or nonexistent forged sender domains.

Defendants also again relies on *Member Souce Media* regarding their argument that "'from names' were not fraudulent.'" Motion To Dismiss 24:18-24. However, Defendants misstate the decision in *Member Source Media* did not discuss "from names"—but privately registered domain names. Defendants also rely the decision in *Silverstein v. Keynetics,* 192 F.Supp.3d 1045 (N.D. Cal 2016). Motion To Dismiss 24:22 to 25:22. However, unlike here and in *Balsam* and *Greenberg*, the plaintiff in *Silverstein* did "not allege that the headers of the emails at issue contained false and untraceable domain names." *Id.* at 1052. Further, unlike here and in *Balsam* and *Greenberg*, the plaintiff in *Silverstein* "admit[ted] that all[of the emails] were sent from linkedin.com, a readily identifiable domain," and the plaintiff did "not allege that he could not determine the actual email senders." *Id.* Here, as discussed above and similar to the plaintiffs in

*Balsam* and *Greenberg*, Plaintiffs did allege that the headers of the emails contained false and untraceable domain names, and that Plaintiffs could not determine the identities of the actual senders.

Defendants attempt to misstate Plaintiffs' allegations in the Complaint—specifically, that "Plaintiffs' entire complaint is that the 'from name' does not literally identify the sender or advertiser." Motion To Dismiss 25:7-10. However, this statement ignores all of the other allegations made in the Complaint and even contradicts themselves in their discussions regarding domain names, the bodies of the emails, and misleading subject lines.

### 5. *The 17529.5(a)(2) Claim Is Not Preempted*

The federal CAN-SPAM Act preempts state anti-spam laws "except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1).

The undeniable trend in the federal and state courts, and the majority of the holdings, is against preemption. The reason is simple: a) By its plain language the CAN-SPAM Act preempts state anti-spam laws except to the extent that state laws prohibit falsity or deception; b) Section 17529.5 only prohibits falsity and deception; so c) Section 17529.5 is not preempted.

Advertising is traditionally an area of state regulation, which gives rise to a presumption against preemption. "Where . . . the field which Congress is said to have pre-empted includes areas that have 'been traditionally occupied by the States,' congressional intent to supersede state laws must be 'clear and manifest.'" *Jevne v. Superior Court*, 35 Cal. 4th 935, 949 (2005); *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008) ("[c]onsumer protection laws such as the [ ] false advertising law [ ] are within the states' historic police powers and therefore are subject to the presumption against preemption" (citation omitted)).

In the interest of creating a national uniform standard for commercial email, Congress chose to exclusively occupy the field of *truthful* commercial email (even truthful spam)... but *only* truthful commercial email. Congress limited the scope of federal preemption, expressly authorizing the states to regulate *false or deceptive* spam. "If Congress had intended to completely displace all state regulation of commercial email, it certainly could have done so in CAN-SPAM.

It could have provided for no exceptions. But, it did not do so." *Free Speech Coalition Inc. v. Shurtleff*, No. 2:05CV949DAK, 2007 U.S. Dist. LEXIS 21556 at *29-30 (D. Utah Mar. 23, 2007) (order on motions to dismiss, to strike, and for preliminary injunction).

*Hypertouch v. ValueClick Inc.*, 192 Cal. App. 4th 805 (2d Dist. 2011) and *Balsam*, 203 Cal. App. 4th at 1102 both ruled that the CAN-SPAM Act does not preempt Section 17529.5. The fact that these two courts ruled against preemption in 2011 and 2012—after the Ninth Circuit's 2009 ruling in *Gordon v. Virtumundo Inc.*, 575 F.3d 1040 (9th Cir. 2009), *infra*—demonstrates that *Gordon* cannot categorically stand for the proposition that Section 17529.5 is preempted. Defendants conveniently neglects to cite the *Hypertouch* and *Balsam* rulings on preemption in its Motion To Dismiss.

Defendants rely heavily on *Gordon*, but the facts are quite distinguishable from the instant dispute, not least because Gordon sued as an Internet Service Provider (even though he had no real customers) on behalf of friends and family who had abandoned their email addresses, after deliberately opting in to receive commercial email. 575 F.3d at 1045-46. In contrast, the instant Plaintiffs actually received the spams at their real email addresses, even though none of the Plaintiffs have a preexisting relationship with Defendants or gave Defendants direct consent to send them emails. Complaint at ¶¶ 5-6, 8, 9, 16-26, 50.

The Ninth Circuit said that Gordon's claims about the spams' headers were, at most, non-deceptive statements or omissions and a heightened content or labeling requirement, and thus preempted. 575 F.3d at 1064. But here, Plaintiffs allege that the From Names and sending domain names materially misrepresent who the spams are from, and that the Subject Lines deceptively and materially misrepresent Defendants' products to trick recipients into purchasing the products. These are not mere *Gordon*-type claims based on labelling requirements, rather, these are false claims right up-front in the From Lines, sender domain names, and Subject Lines.

Finally, *Gordon* "acknowledge[d] facial ambiguity in the statutory text," as to the exception to preemption provision. 575 F.3d at 1062. And *White Buffalo Ventures LLC v. University of Texas at Austin* held that the University's anti-spam policy was not preempted by the CAN-SPAM Act because the "strong presumption against preemption" was triggered by

ambiguities in 15 U.S.C. § 7707. *White Buffalo Ventures LLC v. University of Texas at Austin,* 420 F.3d 366, 369, 372-3 (5th Cir. 2005). Therefore, to the extent that CAN-SPAM's statutory language may be ambiguous in any way, that should similarly lead this Court to follow the other courts and hold against preemption in areas such as deceptive advertising traditionally regulated by the states.

Plaintiffs have pleaded that the emails contain material falsity and deception that are distinguishable from the plaintiff in *Gordon* where the senders were readily identified and traceable by querying the sender domains' WHOIS registration, and strikingly similar to the plaintiffs in both *Balsam* and *Greenberg* where the senders were not readily identified nor could be traced by querying the WHOIS database. Complaint at ¶¶ 62-66, 69, 71, 77-78, 80-81, 84. Thus, this Court should not rule that Plaintiffs claims are preempted.

**B.  The Email Subject Lines Are Likely To Mislead a Reasonable Recipient**

Section 17529.5(a)(3) "makes it unlawful for a commercial e-mail advertisement to contain 'a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." *Rosolowski,* at 1416-1417. However, Defendants mistakenly argue without citation that "to violate § 17529.5(a)(3), an email's subject line must mislead the reasonable consumer as to the contents of the email itself." Motion To Dismiss 27:18-21. Defendants' argument disregards that Section 17529.5(a)(3) also concerns an email's "subject matter." Since the "subject matter" of the emails are Defendants' products—subsection (a)(3) applies.

Plaintiffs pleaded that the subject lines in the emails are likely to mislead a reasonable recipient relative to the contents or subject matter of the e-mails. Complaint ¶ 85-103. Most of these emails contain misleading health claims regarding Defendants' products.  Complaint ¶ 87.

Plaintiffs specifically provide each of the subject lines which contain misleading health claims regarding Defendants' products. Complaint ¶¶ 92-100. Plaintiffs allege the subject lines are materially misleading because they are promising the recipient impossible results of their products. Complaint ¶ 101. The Plaintiffs also alleged that each of the subject lines, when viewed in conjunction with the body of the email, are materially false and deceptive and likely to mislead a

recipient acting reasonably about a material fact regarding the content or subject matter of the message. Complaint ¶ 103. The very nature of the misleading health claims contained in the emails' subject lines regarding the subject matter of the emails, specifically Defendants' products, do not cure the misrepresentations about the subject matter.

Defendants argue that the Plaintiffs "allege that subject lines" in the emails "are likely to mislead a reasonable recipient about the bodies of the emails." Motion To Dismiss 27:21-25. However, Defendants provide no citation to where this is pleaded in the Complaint—because Plaintiffs made no such allegation. *See* Complaint, generally.

Defendants argue that these misleading statements are mere puffery. To support its argument, Defendants rely on *Newcal Indus. V. Ikon Office Solution,* 513 F.3d 1038, 1053 (9th Cir. 2008). Defendants use their subject line "Destroy Tinnitus Fast" as an example of puffery and a general claim. Motion To Dismiss 29:4-18. However, it is glaringly obvious that a reasonable consumer could and would interpret "Destroy Tinnitus Fast" as a quick cure for tinnitus—which is very specific.

**C. In the alternative, Plaintiffs can amend the Complaint To Fix Any Deficiencies**

Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). If this is Court is inclined to sustain Defendants' 12(b)(6) motion, in the alternative, Plaintiffs request leave to amend the Complaint to fix any deficiencies. Allowing Plaintiffs to file the Amended Complaint would serve justice and promote judicial efficiency. Further, there would be no substantial or undue prejudice, bad faith, undue delay, or futility.

## CONCLUSION

For the foregoing reasons and good cause shown, Plaintiffs hereby respectfully request the Court GRANT Plaintiffs' request to transfer this action to the Western District of Texas.

In the alternative, Plaintiffs respectfully request the Court dismiss this case without prejudice on the condition that Defendants waive a statute of limitations defense as Plaintiffs intend to refile the case in the Western District of Texas. The Ninth Circuit has acknowledged that district courts have the discretion whether or not to impose conditions incident to *forum non-*

*conveniens* dismissals. *See Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1234-35 (9th Cir. 2011).

In *Rosolowski*, the court ruled that if the identity of the *sender* can be readily ascertained in the body of a spam, then From Names that are not companies but are well-known brands and trademarks, *or* untraceable domain names, do not violate Section 17529.5. Therefore, *Rosolowski* is inapplicable to this Action, because like in *Balsam* and *Greenberg* and unlike in *Rosolowski*, the instant Plaintiffs allege that the spams' From Names are generic, not a well-known brand or trademark, not readily associated with Defendants, misrepresents who the spams are really from, and could equally refer to Defendants' competitors. Plaintiffs also allege that the sending domain names for most of the spams are not traceable to anyone because either the purported individuals and the purported addresses in the WHOIS registrations do not exist, the sender domain are forged and unregistered on the WHOIS database, or the sender domains are privately registered. Plaintiffs also allege that none of the spams identify the sender in the body.

Plaintiffs sufficiently pled material violations of Section 17529.5, and Section 17529.5 fits squarely within the exception to preemption by the federal CAN-SPAM Act.

Plaintiffs ask this Court to overrule the Motion To Dismiss pursuant to FRCP 12(b)(6) in its entirety. In the alternative, this Court should grant leave to amend to address any deficiencies.

Respectfully submitted,

COHELAN KHOURY & SINGER
CARPER LAW, PLLC
LAW OFFICE OF JOSHUA M. CINTAS

Dated: January 10, 2022

By:  s/ J. Jason Hill
    J. Jason Hill
Attorney for Plaintiffs

NOTICE OF NON-OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION &
OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## **PROOF OF SERVICE**

*Guillaume, et al. v. Fight Age Labs, LLC, et al.*

U.S.D.C. Case No. 2:21-cv-09289-MCS (JPRx)

I, Amber Worden, declare as follows:

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to this action. My business address is 605 "C" Street, Suite 200, San Diego, California 92101.

On January 10, 2022, I instituted service of the forgoing document(s) described as:

**PLAINTIFFS' NOTICE OF NON-OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

on the following parties:

| **Counsel for Defendants** | **Co-counsel for Plaintiffs** |
|---|---|
| Aryeh Kaufman, Esq. | Jamie L. Carper, Esq. |
| LAW OFFICES OF ARYEH KAUFMAN | CARPER LAW, PLLC |
| 5482 Wilshire Blvd., PMB 1907 | 3651 Lindell Road, Suite D1211 |
| Los Angeles, CA 90036 | Las Vegas, NV 89103 |
| aryeh@akaufmanlegal.com | jamie@carperlawfirm.com |
| | |
| | Joshua M. Cintas, Esq. |
| | LAW OFFICE OF JOSHUA M. CINTAS |
| | 10620 Treena Street, Suite 230 - #6821 |
| | San Diego, CA 92131 |
| | josh@lawofficeofjoshuamcintas.com |

in the manner described below:

Submitting an electronic version of the document(s) via portable document format (PDF) to the court at https://ecf.cacd.uscourts.gov.

Service will be deemed effective as provided for by Local Rule 5-4.1 of the District Court of California, Central District.

I declare that I am employed in the office of a member of the bar of this court at whose direction this service is made.

Executed on January 10, 2022, at San Diego, California.

*Amber Worden*

Amber Worden